IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| AARON FLETCHER AND TAMMY FLETCHER )<br>)<br>Plaintiffs, )<br>v. )<br>)<br>CITY OF SUGAR CREEK, MISSOURI; )<br>    103 South Sterling Avenue )<br>    Sugar Creek, MO 64054 )<br>)<br>MIKE LARSON, Mayor )<br>    In his official and individual )<br>    capacity )<br>    103 South Sterling Avenue )<br>    Sugar Creek, MO 64054 )<br>)<br>PAUL LOVING, Building Official )<br>    In his official and individual )<br>    capacity )<br>    103 South Sterling Avenue )<br>    Sugar Creek, MO 64054 )<br>)<br>DOUG PRIER, Code Enforcement Officer )<br>    In his official and individual )<br>    capacity )<br>    103 South Sterling Avenue )<br>    Sugar Creek, MO 64054 )<br>)<br>ED LAYTON, Public Works Director )<br>    In his official and individual )<br>    capacity )<br>    11104 Lake Street )<br>    Sugar Creek, MO 64054 )<br>)<br>NATE RICHARDSON, Fire Chief )<br>    In his official and individual )<br>    capacity )<br>    1001 Heroes Way )<br>    Sugar Creek, MO 64054 )<br>) | <br><br><br><br><br>Case No.<br><br>JURY TRIAL DEMANDED |

1

| | |
|---|---|
| **CHRIS SOULE, Chief of Police** | ) |
|     **In his official and individual** | ) |
|     **capacity** | ) |
|     **1001 Heroes Way** | ) |
|     **Sugar Creek, MO 64054** | ) |
| | ) |
| **AARON STONE, Sergeant** | ) |
|     **In his official and individual** | ) |
|     **capacity** | ) |
|     **1001 Heroes Way** | ) |
|     **Sugar Creek, MO 64054** | ) |
| | ) |
| **TOM BUTKOVITCH, Detective** | ) |
|     **In his official and individual** | ) |
|     **capacity** | ) |
|     **1001 Heroes Way** | ) |
|     **Sugar Creek, MO 64054** | ) |
| | ) |
|     **Defendants.** | ) |

## COMPLAINT FOR DAMAGES

COME NOW Plaintiffs Aaron Fletcher and Tammy Fletcher by and through their counsel Kenneth N. Caldwell of the Caldwell Law Firm, P.C. and as for their Complaint against Defendants allege as follows:

## INTRODUCTION

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 seeking damages against the City of Sugar Creek, Mike Larson, Mayor of the City of Sugar Creek, Paul Loving, Building Official for the City of Sugar Creek, Doug Prier, Code Enforcement Officer for the City of Sugar Creek, Nate Richardson, Fire Chief of the City of Sugar Creek, Chris Soule, Chief of Police of the City of Sugar Creek, Aaron Stone, a Sergeant with the Police Department of the City of Sugar Creek, and Tom Butkovitch, a Detective with the Police Department of the City of Sugar Creek, for violations of the Plaintiffs' respective rights guaranteed by the First, Fourth and

Fourteenth Amendments to the Constitution of the United States of America. Additionally, the Plaintiffs bring one or more tort claims.

## JURISDICTION AND VENUE

2. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§1331 and 1343. Plaintiffs invoke the supplemental jurisdiction of the Court to hear and decide Plaintiffs' claims under state law pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as Defendants were located, and the events giving rise to Plaintiffs' claims occurred, within the boundaries of this judicial district

## PARTIES

4. Plaintiff Aaron Fletcher (hereinafter "Mr. Fletcher") is a citizen of the United States of America and is a former resident of the State of Missouri, residing within the boundaries of the City of Sugar Creek, Missouri at 11227 Norledge Drive. At present, Mr. Fletcher is a resident of the State of Kansas. Mr. Fletcher is not a white citizen within the meaning of 42 U.S.C. § 1981.

5. Plaintiff Tammy Fletcher (hereinafter "Mrs. Fletcher") is a citizen of the United States of America and is a former resident of the State of Missouri, residing within the boundaries of the City of Sugar Creek, Missouri at 11227 Norledge Drive. At present, Mrs. Fletcher is a resident of the State of Kansas. Mrs. Fletcher is not a white citizen within the meaning of 42 U.S.C. § 1981.

6. Defendant City of Sugar Creek ("Sugar Creek") is a constitutionally charted municipal corporation, organized and existing pursuant to Missouri law.

7. Defendant Mike Larson (hereinafter "Larson") was, at all times relevant hereto, the Mayor and an employee of Sugar Creek acting under color of law.

8. Defendant Paul Loving (hereinafter "Loving") was, at all times relevant hereto, the Building Official and an employee of Sugar Creek acting under color of law.

9. Defendant Doug Prier (hereinafter "Prier") was, at all times relevant hereto, the Code Enforcement Officer and an employee of Sugar Creek acting under color of law.

10. Defendant Ed Layton (hereinafter "Layton") was, at all times relevant hereto, the Public Works Director and an employee of Sugar Creek acting under color of law.

11. Defendant Nate Richardson (hereinafter "Richardson") was, at all times relevant hereto, the Fire Chief and an employee of Sugar Creek acting under color of law.

12. Defendant Chris Soule (hereinafter "Soule") was, at all times relevant hereto, a Missouri certified and sworn peace officer, the Chief of Police, and an employee of, Sugar Creek acting under color of law.

13. Defendant Aaron Stone (hereinafter "Stone") was, at all times relevant hereto a Missouri certified and sworn peace officer, a Sergeant, and an employee of, Sugar Creek, and acting under color of law.

14. Defendant Tom Butkovitch (hereinafter "Butkovitch") was, at all times relevant hereto a Missouri certified and sworn peace officer, a Detective, and an employee of, Sugar Creek, and acting under color of law.

# FACTUAL ALLEGATIONS

15. At all times relevant hereto, Plaintiffs Mr. Fletcher and Mrs. Fletcher resided in a home located in the City of Sugar Creek, Missouri at 11227 Norledge Drive (the "Fletcher Residence").

16. The Plaintiffs moved to Sugar Creek, Missouri on or about March 3, 2018.

17. On the second day after moving into the Fletcher Residence (Plaintiffs rented the Fletcher Residence and never had an ownership interest in the same), Defendants Larson and Richardson showed up for a surprise inspection at the Fletcher Residence, handed Plaintiffs a list of things that allegedly needed to be done to the Fletcher Residence to comply with a building permit issued to the former occupant of said property. The Plaintiffs fulfilled the task list as required by the Fire Chief and the Mayor, but no one ever returned to even check on the items or otherwise followed up with Plaintiffs to confirm the alleged requirements had been satisfied. The Plaintiffs were alarmed that, on their second day of residence, the Mayor and Fire Chief had paid them a personal visit, but at the time, suspected it perhaps may be standard protocol in Sugar Creek.

18. In the following weeks, Plaintiffs had several encounters and communications with, and from, Defendants Loving and Prier, as the Building Department for the City of Sugar Creek took the position that Plaintiffs were required to obtain a Business License for Mr. Fletcher's part-time business of arranging for sales of paint. Mr. Fletcher was required to obtain signatures from all residents within approximately a one-half block area of the Fletcher Residence and jump through many other hoops. Ultimately, a business license was never provided to Mr. Fletcher. Mr. Fletcher has since learned that other residents in his former area of residence have conducted businesses similar to the business he conducted, without a business license, all doing so without

question, harassment or protest from the City of Sugar Creek or any of its officers, employees or agents.

19. Going forward, there were repeated written notices (including city tags left on the Fletcher Residence) and surprise visits from Mr. Prier relating to demands on the Plaintiffs to clean up the premises outside the Fletcher Residence, even though said premises were in better condition than when they first moved in.

20. On or about March 25, 2019, Plaintiff Aaron Fletcher was assisting his neighbor outside his neighbor's residence when two police cars showed up and accused Mr. Fletcher of making an illegal U-Turn just prior to the officers' arrival. The officers detained Mr. Fletcher, confiscated his firearm, and took him to jail. He received multiple citations which included making an illegal U-turn, driving without a valid driver's license and driving without proof of insurance, even though the officer did not request proof of insurance from Mr. Fletcher. The police officers did not provide either of the Plaintiffs with a receipt when they took the firearm. On multiple occasions when Plaintiffs requested the return of the firearm, they were informed by police representatives, including Butkovitch, that the police did not have to provide a reason for confiscating the firearm.

21. Later, when Mr. Fletcher again requested the firearm to be returned to him, Butkovitch told Mr. Fletcher that they would not return the firearm until one of the Plaintiffs could provide proof of purchase. Soon thereafter, Plaintiffs obtained the proof of purchase, but when they made repeated calls to, and left many messages with, the police station, after obtaining the allegedly required proof of purchase, their calls were never even returned.

22. In the meantime, Plaintiffs were continually harassed by ongoing surveillance of their residence and multiple unjustified traffic stops by members of the Sugar Creek Police Department.

23. After moving into the Fletcher Residence on or about March 3, 2018, the Plaintiffs tried to find out what they needed to do with respect to paying for their water service. No one in the water department would provide them with any information, and therefore, they were surprised when the first indication there was a problem with their water service was when they received a water service shut-off notice on their front door.

24. On or about April 8, 2019, Mr. Fletcher and Mrs. Fletcher paid a visit to the Sugar Creek Police Headquarters at approximately 8:00 a.m. They intended to find out what they needed to do to obtain the confiscated firearm and to pay their water bill.

25. When they informed Butkovitch that they had the proof of purchase for the firearm, he advised them that they would have to make an appointment to see about it.

26. The Plaintiffs decided to wait until other officers arrived and Plaintiff Aaron Fletcher, alarmed by Butkovitch's previous reaction and demeanor, decided to use his phone to record the events in video format.

27. Chief Soule finally appeared and asked Plaintiffs to wait for a minute while he did something. Chief Soule stated that he had run a computer check on them and found an outstanding traffic warrant on Mrs. Fletcher. Officer Bukovitch immediately arrested Mrs. Fletcher on the spot and said, "Tammy you are going to jail." When Bukovitch processed her, he told Mrs. Fletcher that the arrest was Mr. Fletcher's fault.

28. The police made Mr. Fletcher pay $100 as Mrs. Fletcher's "Jackson County bond" and then said that the Kansas City Police Department ("KCPD") was coming to pick her up.

Instead of being picked up, Sugar Creek officers held her for a period of time and then a Sugar Creek police officer took her to KCPD where Mrs. Fletcher found out that KCPD had no idea that she was even coming.

29. After the contrived incident, Plaintiff Aaron Fletcher proceeded to walk back to his house a couple of blocks away to get a vehicle. He still had to take care of the water bill at Sugar Creek City Hall ("City Hall") and thus, drove back to City Hall. While he was there, Plaintiff Aaron Fletcher, exercising his first amendment rights, asked for a copy of the oath of office taken by the Sugar Creek police officers.

30. Defendant Soule, apparently irritated by the request, told Mr. Fletcher "I ain't giving you shit."

31. Despite the hostility, Plaintiff Aaron Fletcher paid his water bill. As he was leaving, he heard one of the police officers tell one of the other police officers that "it's Ok we will get him when he leaves."

32. Sergeant Stone located Mr. Fletcher's vehicle outside of City Hall and staged his vehicle so that he could intercept Mr. Fletcher's car as Mr. Fletcher returned to his home a couple of blocks away.

33. Although Mr. Fletcher was apprehensive about the threat just made, he exited City Hall and proceeded to enter his vehicle. He was unaware that an officer had let him leave the parking lot in his vehicle with the intend of intercepting his vehicle after he left the parking lot.

34. Mr. Fletcher then drove out of the parking lot of City Hall and traveled North on Sterling towards the Fletcher Residence.

35. Sergeant Stone apparently observed Mr. Fletcher driving through the intersection and then pulled behind Mr. Fletcher's vehicle just north of the intersection and activated his

emergency lights to pull over Mr. Fletcher's vehicle. Another marked police vehicle and Chief Soule in a third vehicle followed not far behind.

36. Fearing what might happen to him as a result of the staged ambush, Mr. Fletcher decided to drive slowly at about 5 to 10 mph the roughly 2 blocks back to the Fletcher Residence, where he hoped witnesses would be present which would hopefully cause the officers to act professionally and within the law. He then stopped in front of a neighbors' house at 11220 Norledge Drive (the "Neighbors' House") where the occupant at the property began using her phone to video the incident.

37. Upon Mr. Fletcher stopping his vehicle, Sergeant Stone and Defendant Butkovitch exited their patrol vehicle, and in coordinated fashion drew their firearms, and prepared to engage with Mr. Fletcher through the use of deadly force. Sergeant Stone ordered Mr. Fletcher out of the vehicle.

38. Defendant Soule also arrived on the scene. He did nothing to interfere with his police officers but sent the neighbor inside to prevent her from continuing to video the events unfolding in front of her house.

39. Mr. Fletcher, who had been ambushed, put his hands up inside his vehicle and yelled out that he did not have a firearm. He was afraid that if he made any move other than raising his hands, the officers would use it as an opportunity to fire their weapons.

40. The officers knew that they had not given his firearm back to him from just a few minutes before.

41. Sergeant Stone seeing Plaintiff's hands up, moved to the driver side door and shattered the driver's side with his baton. With Defendant Butkovich's help, they grabbed Plaintiff

9

Aaron Fletcher by the hair, dragged him out of the vehicle and started striking him. The events were captured on more than one video recording device.

42. After shoving him to the ground and putting handcuffs on him using a great deal of unnecessary force, the officers slammed Defendant Aaron Fletcher's head against one of the police vehicles.

43. Shortly after the incident, one of the residents of the Neighbors' House overheard one of the officers laugh and say, "THIS NIGGER WILL NEVER LEARN." Chief Soule was then heard sarcastically saying, "now you guys know that you have to call him a black guy."

44. Mr. Fletcher was wearing large boots and had trouble getting them into the backseat of the police car. The officers' solution to this problem was to yell at him and slam his legs in the door in an intentional effort to injure him further.

45. After arriving at the Sugar Creek police station, the officers arranged for an ambulance to take Mr. Fletcher to Centerpoint hospital where he was treated for shoulder and back injuries.

46. The officers informed Mr. Fletcher and Mrs. Fletcher that Mr. Fletcher's cell phone had been in the vehicle when it was towed, however, the Plaintiffs later found out that the Sugar Creek Police had taken the phone to obtain a warrant to search it. When it was finally returned, the phone display, the phone charging port and the sim card on the phone were all broken in an unauthorized attempt to access information on the device. The Plaintiffs later found out that no search warrant was ever obtained.

47. The relentless pattern of harassment, violence, unwelcomed language, and denial and delay of services, all from the City of Sugar Creek and its agencies, officers, employees and agents, forced the Plaintiffs to move out of their residence in Sugar Creek and flee to a new

residence in the State of Kansas. As if this was not enough, representatives from the Police Department showed up at the Plaintiffs' eviction process and forced the Plaintiffs to vacate the Fletcher Residence one day before they were required by court order to formally vacate the premises.

## CAUSES OF ACTION

### COUNT I
**Defendants Soule, Stone and Bukovitch Violated Plaintiff Aaron Fletcher's Fourth (4th) Amendment Right Against Unlawful Seizure through Excessive Force cognizable under *42 U.S.C. § 1983***

48. The Plaintiffs incorporate by reference each of the previous paragraphs as if set forth herein in full.

49. Defendants Butkovitch and Stone, acting under color of state law, deprived Mr. Fletcher of rights secured by the Constitution and laws of the United States, including those secured by the Fourth Amendment, by, among other things, drawing their guns on him for a misdemeanor traffic violation, shattering the driver's side window, yanking him out of this vehicle by his hair, striking him, slamming his head into a police vehicle, slamming the police car door on his legs when putting him in the police car, and continuing to strike him when he was in custody.

50. Defendant Soule, acting under color of state law, deprived Mr. Fletcher of rights secured by the Constitution and laws of the United States, including those secured by the Fourth Amendment, by not interfering with, or otherwise preventing or stopping, the wrongful conduct of officers Butkovitch and Stone.

51. As a proximate result of Defendants actions, Plaintiff Aaron Fletcher was damaged as hereinabove alleged. Plaintiffs seek compensatory damages and punitive damages, as well as attorneys' fees, under this claim for relief.

**COUNT II**
**All Defendants Unlawfully Retaliated in Violation of the First Amendment to the Constitution of the United States Cognizable under 42 U.S.C. § 1983 against Defendants**

52. The Plaintiffs incorporate by reference each of the previous paragraphs as if set forth herein in full.

53. The Plaintiffs engaged in protected activity that included filing complaints with the City of Sugar Creek concerning various activities, including the water department for delayed billing and surprising them with a water shut off notice, by videoing the police at the police station when they were trying to obtain the return of a firearm confiscated from them, by asking for public information concerning the Sugar Creek police officers, and by exercising their first amendment right to speak out about their right to peacefully protest against overregulation.

54. The Defendants, and government officials in charge of the City, including but not limited to, Larson, Richardson, Loving, and Layton took adverse action against the Plaintiffs by repeated harassment against them about building codes, phantom business license requirements, dog ordinances, zoning laws, traffic ordinances, interference with utility billing, and other matters.

55. The adverse action taken by the Defendants would chill a person of ordinary firmness from engaging in a course of lawful conduct.

56. The adverse action was motivated in part by the exercise of protected activity by the Plaintiffs.

57. As a proximate result of Defendants actions, Plaintiffs were damaged as hereinabove alleged. Plaintiffs seek compensatory damages and punitive damages, as well as attorneys' fees, under this claim for relief.

## COUNT III
**All Defendants Racially Discriminated Against Plaintiff in violation of 42 U.S.C. § 1981 and § 1983**

58. The Plaintiffs incorporate by reference each of the previous paragraphs as if set forth herein in full.

59. The Plaintiffs are both members of racial minorities.

60. The Plaintiffs discovered while living in the City of Sugar Creek that certain key officers, employees or agents of the City intended to discriminate and did discriminate against the Plaintiffs based on their race.

61. Specifically, because the Plaintiffs had an account and/or other contractual relationship with Sugar Creek PWS for water to their residence, the Plaintiffs are protected from racial discrimination under 42 U.S.C. § 1981.

62. Defendant Layton, by his delayed water billing tactics leading to excessive charges and disconnection threats for water service to their residence when they first moved to Sugar Creek discriminated against the Plaintiffs based on their race.

63. As a result of Defendants' unlawful actions and infringements of Plaintiffs' protected rights, the Plaintiffs have been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

## COUNT IV
**All Defendants Violated 42 U.S.C. § 1981 and § 1983 by Conspiring to Deprive Plaintiffs of Their Civil Rights**

64. The Plaintiffs incorporate by reference each of the previous paragraphs as if set forth herein in full.

65. Defendants Soule, Bukovitch and Stone, and others acting under color of state law, deprived Plaintiffs of rights secured by the Constitution and laws of the United States, including those secured by 42 U.S.C. § 1981 that entitles the Plaintiffs to equal protection of the laws.

66. The Defendants violated the Plaintiffs' rights to equal protection of the laws by an orchestrated effort by one or more of the Sugar Creek employees, officials or agents to force the Plaintiffs to leave town based on their race, origin or other equally protected class.

67. As a proximate result, Plaintiffs were damaged as hereinabove alleged. Plaintiffs seek compensatory damages and punitive damages, as well as attorneys' fees, under this claim for relief.

## COUNT V
**Battery Against Defendants' Stone and Bukovitch**

68. The Plaintiffs incorporate by reference each of the previous paragraphs as if set forth herein in full.

69. Defendants Bukovitch and Stone, did on or about April 8, 2019, by violently pulling Plaintiff Aaron Fletcher from his vehicle by his hair after a traffic stop, slamming his head into a police vehicle and then beating him into submission, committed an unprovoked battery on Plaintiff Aaron Fletcher, thereby injuring his back and shoulder in the process.

70. As a proximate result, Plaintiffs were damaged as hereinabove alleged. Plaintiffs seek compensatory damages for their injuries under this claim for relief.

## PRAYER

WHEREFORE, Plaintiffs pray for a judgment and decree of this Court as follows:

1. For compensatory damages;

2. For cost of suit and reasonable attorney's fees;

3. For punitive damages;

4. For prejudgment interest;

5. For such other and further relief as the court deems just and equitable in the premises.

DATED this 14th day of January, 2020.

## DEMAND FOR JURY TRIAL

Plaintiffs request a jury trial on all triable issues.

By: /s/ Kenneth N. Caldwell

KENNETH N. CALDWELL, ESQ.
Missouri Bar No. 65443
CALDWELL LAW FIRM, P.C.
1201 NW Briarcliff Pkwy, 2nd Floor
Kansas City, MO  64116
Tel.  (816) 535-1001
Facsimile. (702) 548-9796

EDWARD FOSTER
Missouri Bar No. 65443
CALDWELL LAW FIRM, P.C.
1201 NW Briarcliff Pkwy, 2nd Floor
Kansas City, MO  64116
Tel.  (816) 535-1001
Facsimile. (702) 548-9796

ATTORNEY FOR PLAINTIFFS